## TISBURY FUEL SERVICE, INC. vs. MARTHA'S VINEYARD COMMISSION.

No. 06-P-737.

Dukes. December 11, 2006. - April 27, 2007.

Present: DOERFER, BROWN, & COHEN, JJ.

*Martha's Vineyard Commission. Zoning,* Appeal, Judicial review, Gasoline station. *Practice, Civil,* Zoning appeal.

A trial court judge applied the proper standard in reviewing de novo a decision of the Martha's Vineyard Commission (MVC) denying the plaintiff's application to build a gasoline station in a commercial zoning district [774-777]; further, the judge correctly found that the MVC acted reasonably in determining that the probable detriments of the proposed gasoline station outweighed its probable benefits [777-780], and the judge was not limited to the evidence presented before the MVC, but rather could properly consider testimony and a report offered for the first time at trial [780-781].

CIVIL ACTION commenced in the Superior Court Department on February 11, 2003.

The case was heard by *Bertha D. Josephson,* J.

*Stephen Schultz* for the plaintiff.

*Johanna W. Schneider (Eric W. Wodlinger* with her) for the defendant.

BROWN, J. On April 25, 2002, Tisbury Fuel Service (Tisbury Fuel) submitted an application to the town of Tisbury building inspector to build a gasoline station on High Point Lane, Tisbury. The building inspector referred the application to the Martha's Vineyard Commission (MVC) for consideration as a development of regional impact (DRI). As part of its application, Tisbury Fuel also submitted a contractual promise to sell name-brand gasoline at its station at a discounted price for thirty years.[1]

---

[1]There are only nine gasoline stations on Martha's Vineyard. Gasoline

After a public meeting on the application, the MVC voted by a vote of eight to three to deny the application. Tisbury Fuel appealed to the Superior Court, and after a six-day de novo trial, the judge found against Tisbury Fuel. Tisbury Fuel appeals from the ensuing judgment dismissing its complaint.

High Point Lane is a side road running from State Road, which is a wider, two-lane designated State highway. The proposed site is located in a commercial zoning district, in which a gasoline station is a permitted use. The proposed site is not located in an area that the MVC has designated as a "district of critical planning concern" pursuant to St. 1977, c. 831 (the act). Tisbury Fuel's application was reviewed by the MVC. The MVC is empowered by the act to review and approve projects referred to it by the town permit-granting authorities as potential DRIs.[2]

1. *Standard of review.* Tisbury Fuel claims that the judge did not apply the proper standard in reviewing the MVC decision denying its application to build a gasoline station on High Point Lane. Section 18 of the act provides that when an aggrieved party appeals to the Superior Court, "[t]he court shall hear all pertinent evidence and shall annul the determination of the [MVC] if it finds that said determination is unsupported by the evidence or exceeds the authority of the [MVC], or it may remand the case for further action by the commission or may make such other decree as is just and equitable." St. 1977, c. 831, § 18. The standard of review articulated in § 18 is substantially similar to those in other statutes governing appeals to courts from decisions of local zoning boards or regional commissions. See, e.g., G. L. c. 40A, § 17,[3] governing appeals of zoning board decisions; the Cape Cod Commission enabling

prices on Martha's Vineyard are high and do not reflect market prices elsewhere in Massachusetts.

[2]The act directs the MVC to allow the referring agency to grant a development permit for a DRI only if it finds, in relevant part, that "(*a*) the probable benefit from the proposed development will exceed the probable detriment as evaluated pursuant to section fifteen; [and] (*b*) the proposed development will not substantially or unreasonably interfere with the achievement of the objectives of the general plan of any municipality or the general plan of the county of Dukes County." St. 1977, c. 831, § 14.

[3]General Laws c. 40A, § 17, added by St. 1975, c. 808, § 3, provides in relevant part:

statute, St. 1989, c. 716, § 17(*d*)[4]; and the Old King's Highway Regional Historic District Act, St. 1973, c. 470, § 11.[5]

In *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555 (1954), the Supreme Judicial Court considered a predecessor statute to G. L. c. 40A, § 17, i.e., G. L. c. 40, § 30, as appearing in St. 1935, c. 388, § 2.[6] Analogizing the language of § 30 to that of a similar Boston zoning statute, the court wrote:

> "Upon appeal, it is the duty of the judge to hear all the evidence and to find the facts. He is not restricted to the evidence that was introduced before the board. The decision of the board is competent evidence to enable the judge to ascertain what conclusion the board reached in order that he may determine whether upon the facts found by him the decision of the board should stand or should be annulled or should be modified. In a word, the matter is heard de novo and the judge makes his own findings of fact, independent of any findings of the board, and determines the legal validity of the decision of the board

"The court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require."

[4]Statute 1989, c. 716, § 17(*d*), provides in part:

"The court shall, on appeal, hear all evidence pertinent to the authority of the commission and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of said commission or make such other decree as justice and equity may require."

[5]Statute 1973, c. 470, § 11, provides in part:

"The court shall hear all pertinent evidence and determine the facts, and if, upon the facts so determined, such determination or approval is found to exceed the authority of the commission, the court shall annul such determination or approval, and remand the case for further action by the commission."

[6]General Laws c. 40, § 30, provided:

"[The court] shall hear all pertinent evidence and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require."

upon the facts found by the court, or if the decision of the board is invalid in whole or in part, the court determines what decision the law requires upon the facts found."

*Pendergast, supra* at 558-559, quoting from *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953). See *Giuffrida* v. *Zoning Board of Appeals of Falmouth, ante* 396, 401 n.7 (2007) (noting that the formulation appearing in c. 40A, and its predecessor, G. L. c. 40, § 30, have "a construction long settled by *Pendergast*"). General Laws c. 40A, § 17, "retains from earlier practice the unique form of judicial review applicable peculiarly to zoning cases, whereby the court finds the facts de novo and measures the legal sufficiency of the board of appeals' decision against the court's findings of fact rather than against those found by the board." *Green* v. *Board of Appeals of Provincetown,* 26 Mass. App. Ct. 469, 473 n.6 (1988), citing *Pendergast, supra* at 558-559.

Judges reviewing zoning decisions may incorporate the concept of arbitrary and capricious when considering the outer limits of what a zoning board may do based on facts found by the judge. See *Harris* v. *Old King's Hy. Regional Historic Dist. Commn.,* 421 Mass. 612, 615-616 (1996) (noting that a judge is required to affirm a decision of the regional commission whose enabling statute contains language substantially similar to that in the superseded G. L. c. 40, § 30, see note 6, *supra,* unless "on the facts found by the judge, the regional commission should have concluded that the local committee exceeded its authority, exercised poor judgment, or was arbitrary, capricious, or erroneous in its action"); *Britton* v. *Zoning Bd. of Appeals of Gloucester,* 59 Mass. App. Ct. 68, 72 (2003), quoting from *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 639 (1970) (a court "must affirm the board's decision unless it finds that denial of the application was 'based on a legally untenable ground, or [was] unreasonable, whimsical, capricious or arbitrary' ").

The Supreme Judicial Court has commented on the paucity of cases considered under the standard articulated in *Pendergast* in which the court ordered a board to grant a permit denied below, and noted that such reversals occurred where "the permit had been denied solely upon an illegal ground." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. at 559. No claim is made

here that the MVC acted beyond its lawful authority in denying Tisbury Fuel's application.

Evaluating the judge's decision against this background, we conclude she applied the proper standard of review, and we affirm her decision.

2. *Challenges to judge's evaluations of evidence at trial.* Tisbury Fuel asserts that the judge's decision upholding MVC's determination that the probable benefits of the proposed gasoline station do not outweigh its probable detriments was in error. Tisbury Fuel relies on § 15 of the act, which lists the factors to be considered in making a finding of the probable benefits and detriments of a proposed development not located within a district of critical planning concern. See St. 1977, c. 831, § 15. Tisbury Fuel argues that there is a need for a new gasoline station on Martha's Vineyard (the island), the proposed site is appropriate, the sale of gasoline at a lower price to consumers would enhance the local economy, and the proposed gasoline station would reduce environmental dangers to the island.

Taking the record as a whole, we think the judge correctly could find (as she did) that the "MVC acted reasonably in finding that the probable detriment of the proposed project outweighed the probable benefits." Thus, we conclude that the judge's finding that the MVC did not act in an arbitrary or capricious manner in determining that the probable detriments of adding a gasoline station "outweighed the probable benefits" was likewise not error. We address each argument in turn.

a. *The need for a new gasoline station on the island.* Tisbury Fuel asserts that while it is true that there are nine gasoline stations already on the island, in 1970 there were fourteen gasoline stations. It argues that the need for another gasoline station is well founded because the population on the island continues to increase annually, and the number of registered motor vehicles has increased as well. The judge found that nine gasoline stations for the island were sufficient. She concluded that the ratio of gasoline stations to year-round population on the island was much greater than the average for Massachusetts or the United States as a whole.

Tisbury Fuel contends that the judge's conclusion does not

specifically address the seasonal residents, most of whom have cars. It points out that over time the number of gasoline stations on the island has decreased while residency on the island has increased. After hearing six days of testimony, which generated a lengthy transcript and many exhibits, the judge conducted a careful review of the evidence. Based on her own findings of fact, see *Pendergast,* 331 Mass. at 558-559, the judge did not err in determining that the MVC's decision on the need for a new gasoline station on the island was valid.

b. *The appropriateness of the proposed site.* There was sufficient evidence for the judge reasonably to conclude that the proposed site of the new gasoline station on High Point Lane was not appropriate. Tisbury Fuel notes that the two gasoline stations located in the town of Tisbury are located near Five Corners, a highly congested area. Because the new gasoline station site would be located away from that area, it argues that the gasoline station would actually relieve some traffic in the Five Corners vicinity. Tisbury Fuel's expert testified that the new gasoline station would eliminate sixteen to twenty vehicles per peak traffic hour through Five Corners.

The judge disagreed that the impact-on-traffic debate was that one-sided. She concluded that the segment of State Road that includes High Point Lane is part of one of the most heavily traveled stretches of roadway on the island. Businesses located along the road include a nursery, a shopping center, a video store and two hardware stores. The island's major supermarket is also located there. Moreover, High Point Lane is a dead-end road. Therefore, the addition of a gasoline station would increase traffic congestion on the road as well as create safety concerns. The judge also noted that a traffic study submitted by MS Transportation Systems in 2002 in support of Tisbury Fuel's application supported the view that the proposed gasoline station would cause delays on State Road. In addition, the judge conducted a view of the site of the proposed project. See *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 531, 532 (1958) (stating that the court could not conclude that the judge's inference, though not based on evidence bearing directly on point, was not permissible given that judge had the benefit of a view).

A traffic engineer hired by the MVC reviewed the 2002 MS Transportation Systems traffic study and duplicated the steps the engineer took in preparing it. He concluded that MS Transportation Systems had underestimated traffic levels on State Road, and that traffic flow would be worsened by the introduction of a new gasoline station on High Point Lane. The judge heard testimony that safety on State Road would be impaired by the gasoline station because of extended delays caused by traffic entering from the proposed gasoline station, fuel trucks servicing the station encroaching on the center lane of State Road, and an electric box obstructing the southbound view for drivers.

Tisbury Fuel contends that the judge placed too much emphasis on traffic congestion.[7] We discern no error in the judge's findings on this issue. In *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* v. *Martha's Vineyard Commn.*, 380 Mass. 785, 803 (1980), the Supreme Judicial Court held that "[t]he [MVC] statute . . . expressly authorizes the [MVC] to consider 'the amount of pedestrian and vehicular traffic likely to be generated' in determining what is a DRI. St. 1977, c. 831, § 12(*c*). This provision, and the fact that the stated purpose of the [MVC is] to protect 'values . . . which contribute to public enjoyment, inspiration and scientific study,' *id.* at § 1, indicate that the Legislature intended to preserve the unique features of Martha's Vineyard." Here, the commission weighed the benefits of the proposed project to the island against its detriments, as required by the act. Its assessment that the proposed gasoline station would constitute a high-traffic generating use was sufficiently supported by the evidence before the judge.

c. *Selling gasoline at a lower price to consumers.* Tisbury Fuel points out that gasoline prices on the island are significantly higher than gasoline prices on the mainland and that it offered to sell gasoline at a reduced rate if allowed to open its proposed gasoline station. The MVC concluded that lower gasoline prices would benefit the island's residents, particularly those with

[7]Tisbury Fuel does concede that traffic would be increased on State Road. However, it argues that traffic would increase by less than two per cent in peak season and by one per cent or less in the off season. We conclude that the end result remains the same — traffic flow would increase.

limited incomes. The judge, however, found that lower fuel prices would not significantly contribute to the local economy, as they would not create any appreciable number of new jobs or any new revenue sources. We cannot say that the evidence before the judge ruled out her properly making such a finding. That she reached a determination contrary to that of the MVC on this question is irrelevant since her finding comports with the MVC's ultimate decision to deny the application.[8]

3. *Challenge to evidentiary ruling.* Tisbury Fuel claims that the judge erred in admitting in evidence a report of a traffic engineer prepared by the MVC in preparation for trial. The report was prepared by MVC's own traffic consultant firm, and the judge allowed its author to testify as an expert. Tisbury Fuel argues that the report and testimony were unduly prejudicial, as without them, the only expert testimony was that the proposed gasoline station would have a minimal effect on traffic. The MVC argues that the judge properly allowed the report and testimony of the report's author in evidence, concluding that the nature of de novo review is such that a reviewing court is not limited to the evidence presented before the permit application review authority.

The Supreme Judicial Court has held that in de novo appeals, the trial court is not restricted to hearing the evidence produced before the board. See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. at 558-559. Moreover, Massachusetts courts must make findings of fact independent of those made by a permit reviewing authority. See *Roberts* v. *S.W. Bell Mobile Sys., Inc.*, 429 Mass. 478, 488-489 (1999). Therefore, we conclude that the judge properly allowed in evidence the testimony and report of MVC's engineer.

In short, we conclude that the evidence before the Superior Court judge supports her findings and determination that the MVC's decision was factually supported. To the extent we do

---

[8]Tisbury Fuel presented evidence that its proposed gasoline station would reduce environmental dangers to the island caused by the transporting and storage of gasoline. The judge did not discuss this evidence in her memorandum. We infer from the judge's silence on this matter that she did not consider the reduced environmental effects to outweigh the significant detriments of the proposed project.

not discuss other arguments made by Tisbury Fuel, they "have not been overlooked. We find nothing in them that requires discussion." *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).

*Judgment affirmed.*